H & R CORPORATION, Appellant,

v.

DISTRICT OF COLUMBIA, Appellee.

NORAIR REALTY COMPANY, Inc., Appellant,

v.

DISTRICT OF COLUMBIA, Appellee.

Olga Ruppert MAY et al., Appellants,

v.

DISTRICT OF COLUMBIA, Appellee.

Nos. 18328, 18329, 18336, 18337.

United States Court of Appeals
District of Columbia Circuit.

Argued Oct. 23, 1964.

Decided May 7, 1965.

Petition for Rehearing En Banc Denied
June 21, 1965.

Mr. David Carliner, Washington, D. C., attorney for appellant in Nos. 18,328 and 18,329, and Mr. James D. Newton, Washington, D. C., attorney for appellants in No. 18,337, argued for all appellants.

Mr. Jack Wasserman, Washington, D. C., was also on the brief for appellant in Nos. 18,328 and 18,329. Mr. James M. Earnest, Washington, D. C., was also on the brief for appellants in No. 18,337.

Messrs. John F. Myers and Kahl K. Spriggs, Washington, D. C., were on the brief for appellant in No. 18,336.

Mr. John R. Hess, Asst. Corp. Counsel for the District of Columbia, with whom Messrs. Chester H. Gray, Corp. Counsel, Milton D. Korman, Principal Asst. Corp. Counsel, and Hubert B. Pair, Asst. Corp. Counsel, were on the brief, for appellee.

Before BAZELON, Chief Judge, and WASHINGTON and DANAHER, Circuit Judges.

WASHINGTON, Circuit Judge:

This is a condemnation case. The District of Columbia took certain properties near Washington Circle, in the Northwest section of Washington, adjoining the central business area of the city, for use as a park and a police station. The owners demanded a jury trial as to the amount of compensation.

The measure of compensation is the fair market value of the condemned property just prior to the taking. United States v. Miller, 317 U.S. 369, 373–374, 63 S.Ct. 276, 87 L.Ed. 336 (1943). In an effort to establish the market value of the property at that time, the owners asserted that there was a reasonable possibility that the property would be rezoned for a more profitable use—the construction of large apartment houses—than the existing zoning (for the construction of residences and small apartment houses) would allow.[1] Such rezon-

---

1. Strictly speaking, the issue is not whether there is a reasonable possibility of rezoning at the time of taking; the issue is whether knowledgeable buyers thought that there was a reasonable possibility of rezoning at that time. Hence, a decision by the Zoning Commission that the property would or would not be rezoned, if such decision had not been made public at the time of taking, would not itself be relevant to this inquiry. Cf. Rapid Transit Co. v. United States, 295 F.2d 465, 466 (10th Cir. 1961); United States v. Meadow Brook Club, 259 F.2d 41, 45 (2d Cir.), cert. denied, 358 U.S. 921, 79 S.Ct. 290, 3 L.Ed.2d 239 (1958). These cases seem to focus on the question of the *actual* probability of a zoning change at the time of taking. While this approach is at odds with the fair market value standard, it would probably make no difference in most cases. Generally, a policy of the Zoning Commission would be well-known and would have an impact on fair market value.

ing, which they claimed would add about a third to the estimated fair market value of the land, had never in fact been requested, much less ordered. While the owners did not claim that they were entitled to this increased amount, they argued that the possibility of this increase in value should be taken into account in calculating market value at the time of taking. Two expert witnesses, testifying for the appellants, stated their belief that just prior to the time of taking, a knowledgeable buyer would have taken into account the reasonable probability that the land in question would be rezoned.

The trial judge apparently rejected this consideration as an element in fair market value. His charge, although it was somewhat confusing, reflected his opinion that the possibility of a zoning change should not be taken into account as affecting market value at the time of taking. He stated:

"You are instructed that all of the lots now under consideration in Square 37 were zoned R–5B on the dates of taking. There has been no testimony in this case from the Zoning Commission of the District of Columbia Government showing that on the dates of taking there was a reasonable probability that the zoning of any of the lots at issue would be rezoned to a higher density zoning.

"You are, therefore, instructed that you are not permitted to speculate as to what the Zoning Commission of the District of Columbia might have done with regard to rezoning this property, following the dates of taking."

It is true that the charge also contained a correct statement of the test that the jury was to apply:

"Fair market value is defined in the law as the price which a willing seller, who is not obliged to sell, would be willing to accept and the price which a willing buyer, who is not obliged to buy, would be willing to pay for the property. This definition of fair market value, of course, assumes that the buyer is knowledgeable and that the seller is knowledgeable. This means that both the buyer and the seller have full knowledge of all of the present or potential elements of value involved in the transaction into which they are willing to enter.

\* \* \* \* \*

" \* \* \* Fair market value is the criterion and this fair market value is based upon the probabilities as they appear to the willing buyer and the willing seller."

However, the charge is at best ambiguous. And the specific language instructing the jury not to speculate on a zoning change would probably override the general instruction to look to "the probabilities as they appear to the willing buyer and the willing seller." We think that the net result of the charge was to give the jury the mistaken impression that they could not consider the possibility of rezoning.

The judge has a responsibility to prevent the jury from indulging in baseless speculation about future changes in zoning. In our view the judge's responsibility is to determine whether a jury would be justified in concluding on the evidence that a willing buyer at the time of taking would have taken into account the possibility of rezoning in deciding the fair market value of the condemned property. If it would, the judge should instruct the jury to take into account the possibility of a zoning change. Only if the trial judge is satisfied that a jury could not reasonably conclude that the possibility of a zoning change would affect the fair market value should he instruct the jury to disregard that element of value. In deciding whether there is sufficient evidence for the jury, the trial court should not resolve questions of credibility. But a jury question is not presented by a witness' bare assertion that zoning change was probable. His opinion must have some foundation in fact. "It is axiomatic that a witness

must explain the 'observational basis' of his testimony \* \* \* in order to meet even the test of admissibility. 2 Wigmore, Evidence § 562." Rollerson v. United States, 119 U.S.App.D.C. 400, 406, 334 F.2d 269, 275 (1964). In this case there was a clash of credible testimony, based on a reasonable foundation, regarding the probability of a change in zoning. Under such circumstances, the judge should have submitted the matter to the jury for its decision under proper instructions. Contrary to the trial judge's charges, Zoning Commission testimony need not be adduced in order to put the issue before the jury.[2]

▮▮▮▮▮ Appellants also protest the trial judge's decision on the admissibility of evidence. He ruled that a report of the Zoning Advisory Council, rendered to the Zoning Commission, concerning land somewhat similarly situated, was inadmissible in evidence because it was irrelevant.[3] The text of the proffered report is as follows:

"The Council invites attention to our report in Case No. 1 heard on December 5, which is incorporated herein by reference. For convenience, the application [sic] portion of this report is quoted: 'By memorandum of April 12, 1962, all Commission members were reminded by the staff that expansion of the R–5–D district [zoned for high rise apartment houses] is essential. This is a conclusion based on the assumption that Commission policy endorsing high rise apartment development peripheral to the Central Business District is sound and that the rate of construction reached during 1960–61 ought to be maintained. This building pace should not be slowed as a result of too few available sites and inflated land costs, a combination which results in high rents and undue investment risk. (R–5–D areas total only three-tenths of one per cent of the City's zoned area.)

"We think here, and in a similar case opposite on the south side of L Street, which is to be heard on December 10th, that the only pertinent issues are minor and solely those of adjustment of boundary lines of that well-established portion of the R–5–D district known as the New Hampshire coridore [sic]. All issues and policies should be considered, however, and we believe the Commission should not loose [sic] sight of basic objectives."

As to two of the appellants the report was properly excluded. The declarations of taking of the property of appellants Norair Realty Company and Olga Ruppert May, et al., were filed on October 18, 1962. Appellant H & R Corporation had two pieces of property taken, one on October 18, 1962, and one on January 16, 1963. The report of the Zoning Advisory Council was submitted to the Zoning Commission on December 10, 1962. It seems clear that the report had not been written on October 18, 1962, so that it cannot go to establish the value of the land taken on that date.[4] As to H & R's property taken in January, 1963, assuming that the report had been made public before the day of taking, the admissibility of the report depends on a balance of the probative value of the report and the delay and confusion that

---

2. One Government witness testified: "I don't think the Zoning Commission, to the best of my knowledge, ever adopts any official position except with respect to specific properties."

3. The Zoning Advisory Council is a statutory body, established to advise the Zoning Commission concerning proposed amendments to the Commission's regulations and maps. See D.C.Code § 5–417 (1961).

4. The Advisory Council report of December 10, 1962, contains statements purporting to characterize Commission policy and a previous staff report. While we think that these statements are inadmissible, except to show what the Advisory Council considered the Commission's policy to be, it is open to the appellants to try to prove Commission policy by the introduction of competent evidence in a new trial.

its admission would cause. It is true that this report related to different property than that here at issue; that the Advisory Council is not the ultimate policy-making body; that the staff of the Zoning Commission may not have been correctly quoted; and that the jury might have to be instructed to use the report for some purposes and not for others. On the other hand, knowledge of the contents of this report would probably have increased the amount that an informed buyer would have paid for this property. In deciding whether or not to admit the report, the trial judge should make some inquiry into the significance attached to such reports by the Zoning Commission and the real estate community.

The decision of the District Court is

Reversed and the cases remanded for further proceedings not inconsistent with this opinion.

DANAHER, Circuit Judge (dissenting):

My colleagues conclude that the District Court erred in its exclusion of a December 10, 1962 report of the Zoning Advisory Council, the text of which they have quoted. The proffer rested upon the ground that the report contained a statement of policy by the Zoning Commission. Apparently the Zoning Commission had never acted on the report submitted by the Council. There was no showing that any of the property owners in the affected area had ever applied for a change in zoning. There was no evidence that the Zoning Commission had adopted or even contemplated a change in policy. The District's appraisers had submitted their opinions as to the highest and best use of the land without regard to any possibility, either reasonably or remote, that in the future some higher value might be attributed to the property because of a zoning change. Thus the "report" was not rebuttal.

The Supreme Court has told us that

"The highest and most profitable use for which the property is adaptable and needed or likely to be needed in the reasonably near future is to be considered, not necessarily as the measure of value, but to the full extent that the prospect of demand for such use affects the market value while the property is privately held." [1]

Here, quite in accord with the rule the jury was instructed that it was not limited in considering value to the use to which the property was being put. On the contrary,

"[Y]ou [the jurors] have a right to consider the most advantageous and the most valuable use of which that property was or is capable. For example, if the whole or any part of the property is peculiarly adopted [*sic*] by its zoning, its location, its surroundings or its natural advantages, or by its intrinsic character or some other circumstance to some particular use which gives it a higher market value than it would otherwise have, that circumstance may be considered in determining the fair market value."

The trial judge continued:

"By the most valuable use or uses to which the property can be or may be put is meant either some existing use *or one which the evidence shows is so reasonably likely in the near future* that the availability of the property for that use would affect its fair market price, and would be taken into account by a purchaser under fair market conditions." (Emphasis supplied.)

In the Olson case, a unanimous Court added:

"The determination is to be made in the light of all facts affecting the market value *that are shown by the evidence* taken in connection with those of such general notoriety as not to require proof. Elements affecting value that depend upon events or combinations of occurrences

---

1. Olson v. United States, 292 U.S. 246, 255, 54 S.Ct. 704, 708, 78 L.Ed. 1236 (1934).

which, while within the realm of possibility, are not fairly shown to be *reasonably probable*, should be excluded from consideration for that would be to allow mere speculation and conjecture to become a guide for the ascertainment of value—a thing to be condemned in business transactions as well as in judicial ascertainment of truth." (Emphasis supplied.) [2]

The trial judge excluded the proffered report and in my view, his ruling was quite within the guidelines thus spelled out. He could readily discern the absence of foundation for its admissibility. He could see the infirmities noted by my colleagues—as they were bound to do on this record:

"It is true that this report related to different property than that here at issue; that the Advisory Council is not the ultimate policy-making body; that the staff of the Zoning Commission may not have been correctly quoted. * * *."

The majority opinion at that point should have gone on to say that the reference to the views of the staff and its "assumption" as to Commission policy at best was only hearsay.[3] See the report itself, *supra,* as set out by my colleagues, in particular part:

"All Commission members were reminded by the staff that expansion

of the R-5-D district [zoned for high rise apartment houses] is essential. This is a conclusion based on the assumption that Commission policy endorsing high rise apartment development peripheral to the Central Business District is sound and that the rate of construction reached during 1960–61 ought to be maintained."

There was no showing on this record that the Council's "report" had even been announced prior to the time of the second H. & R. Corporation taking on January 16, 1963,[4] yet my colleagues indulge in another "assumption" in ruling with reference to it.

I fail to understand how any such "report," subject to the various infirmities I have mentioned, can be deemed to constitute relevant evidence to establish a substantial possibility, much less a "reasonable probability," that rezoning would be based upon it and that higher valuations might thereupon follow.[5]

I believe that the ruling of the trial judge was not erroneous and that his charge, taken as a whole, was adapted to the issues and fairly instructed the jury as to the proper basis for ascertainment of its awards. I would affirm the judgments.

2. *Id.* at 257, 54 S.Ct. at 709.

3. My colleagues say that such statements "were inadmissible."

4. My colleagues concede that as to "two of the appellants the report was properly excluded" because the takings had occurred before the date of the Council's report, December 10, 1962.

5. Even at a risk approaching sheer speculation, the trial judge had allowed the appellants' experts to testify that one of the factors they used in reaching fair market value was the expectation of a

change in zoning. The judge, therefore, went as far as he properly could, in my view, when he instructed the jury thus:
"You are to determine fair market value as though this proceeding had never been brought, as though there was a voluntary sale between a willing seller and a willing buyer, the seller not being compelled to sell and the buyer not being compelled to buy, and I repeat, on the assumption that both the potential buyer and seller were knowledgeable of all of the elements of value involved in the transaction."