**UNITED STATES of America, Plaintiff,**

**v.**

**8,968.06 ACRES OF LAND, MORE OR LESS, Situated IN CHAMBERS AND LIBERTY COUNTIES, TEXAS, Defendant.**

**Civ. A. No. 68–G–29.**

United States District Court, S. D. Texas, Galveston Division.

May 7, 1971.

Anthony P. J. Farris, U. S. Atty., Rex Green, Asst. U. S. Atty., Houston, Tex., Dollie M. Smith and Robert M. McKee, U. S. Dept. of Justice, Washington, D. C., for plaintiff.

Harold R. DeMoss, Jr., and Patrick Oxford, of Bracewell & Patterson, Houston, Tex., for defendant.

## MEMORANDUM AND ORDER

NOEL, District Judge.

This case involves a taking by the United States of approximately nine thousand acres of land near the mouth of the Trinity River for the Wallisville Reservoir Project, which is dedicated in part to the improvement of navigation. The Trinity River, as well as other streams and bodies of water on the property in issue, have either been conceded to be, or found to be, navigable waters of the United States. On September 24, 1970, this Court, then being obliged to follow the harsh rule of Rands v. United States, 389 U.S. 121, 88 S.Ct. 265, 19 L.Ed.2d 329 (1967), held that the condemnees were not entitled to compensation for value inhering in the land by reason of its contiguity to such navigable waters. United States v. 8,968.06 Acres of Land, 318 F.Supp. 698 (S.D.Tex.1970). The September order has now been vacated, in view of a statute subsequently enacted by the Ninety-First Congress, legislatively setting aside Rands and its predecessors. The Rivers and Harbors Act of 1970, Pub.L. No. 91–611, § 111 (Dec. 31, 1970), provides in part that:

> In all cases where real property shall be taken by the United States for the public use in connection with any improvement of rivers, harbors, canals, or waterways of the United States, and in all condemnation proceedings by the United States to acquire lands or easements for such improvements, the compensation to be paid for real property taken by the United States above the normal high water mark of navigable waters of the United States *shall be the fair market value of such real property based upon all uses to which such real property may reasonably be put, including its highest and best use, any of which uses may be dependent upon access to or*

*utilization of such navigable waters.* (emphasis added)

■ Pursuant to this statute,[1] and established principles of valuation in eminent domain, the highest and best reasonably probable use of the condemned land may be shown insofar as "the prospect of demand for such use affects the market value while the property is privately held." Olson v. United States, 292 U.S. 246, 255, 54 S.Ct. 704, 709, 78 L.Ed. 1236 (1934); Boom Company v. Patterson, 98 U.S. 403, 408, 25 L.Ed. 206 (1878); United States ex rel. T. V. A. v. Powelson, 319 U.S. 266, 63 S.Ct. 1047, 87 L.Ed. 1390 (1943). Accordingly, defendants would show that the land is suited for recreational/residential development by reason of its proximity to both the populous metropolitan Houston area and to the Trinity River. In particular, defendants contend that the property is well suited for channel-cut subdivision—a type of land development which contemplates the digging of private channels within a residential subdivision in such a manner as to provide each lot with access to a channel, with the soil from the channel-cuts being used to raise the elevation of the building site lots.

■ Defendants concede that the construction of channel-cuts adjacent to navigable waters could have been undertaken only by authority of a permit issued by the Secretary of the Army upon recommendation of the Chief of Engineers. 33 U.S.C. § 403; cf. Zabel v. Tabb, 430 F.2d 199 (5th Cir. 1970), certiorari denied 401 U.S. 910, 91 S.Ct. 873, 27 L.Ed.2d 808 (Feb. 22, 1971). Therefore, in demonstrating that the prospective land use described above would have enhanced the market value of the subject tract at the date of taking, defendants must also demonstrate that a willing buyer and seller would have regarded the issuance of the permit as reasonably probable.[2]

Defendants contend that the trier of fact, in assessing the probability of the permit's issuance, may not consider the pendency of the Wallisville Project. Accordingly, defendants have filed a motion in limine which would require ascertainment of fair market value as of the date of taking without regard to the initiation, planning, or contemplation of the project or the incident taking of land. This motion is opposed by the Government.[3]

■ In condemnation of large tracts of land for major public works, it is

---

1. By its terms, Section 111 applied " * * to all acquisitions of real property after the date of enactment of this Act, and to the determination of just compensation in any condemnation suit pending on the date of enactment hereof." The instant suit was pending on the date of enactment.

2. "In determining this value, the highest and most profitable use for which the property is adaptable and needed, or is likely to be needed in the near future, is to be considered; but elements affecting value that depend upon events, which while possible are not fairly shown to be reasonably probable, should be excluded." Cameron Development Company v. United States, 145 F.2d 209, 210 (5th Cir. 1944). For example, if there is a reasonable probability that land will be rezoned for a higher use, the effect of this contingency upon a willing buyer's offer may be considered. United States v. Meadow Brook Club, 259 F.2d 41 (2nd Cir. 1958), cer-

tiorari denied 358 U.S. 921, 79 S.Ct. 290, 3 L.Ed.2d 239 (1958); Wolff v. Commonwealth of Puerto Rico, 341 F.2d 945 (1st Cir. 1965); H & R Corporation v. District of Columbia, 122 U.S.App.D.C. 43, 351 F.2d 740 (1965). In the present context, it is interesting to note that "(t)he probability of rezoning or even an actual change in zoning which results from the fact that the project which is the basis for the taking was impending cannot be taken into account in valuing the property in the condemnation proceeding." 4 Nichols on Eminent Domain § 12.322(1) (Supp. 1970, at 144).

3. The Government relies upon United States v. Cox, 190 F.2d 293 (10th Cir. 1951), certiorari denied 342 U.S. 867, 72 S.Ct. 107, 96 L.Ed. 652 (1951), involving condemnation of ranch lands and holding that accessibility and availability of Government permit grazing land could not be considered when the permits were cancelled coincident with

rare that the sovereign moves with speed or stealth. To the contrary, the discussion, planning, authorization, funding, and other preliminaries often serve to thoroughly advertise the impending condemnation in the affected neighborhood well in advance of the date of taking. Depending upon whether the nature of the project will have a beneficial or deleterious impact upon its locale, the very fact that it looms in the future may be expected to have an enhancing or depressing influence upon property values. Obviously, this phenomenon introduces a distortive factor into the market value method of determining just compensation as of the date of taking. When this factor has a depreciative effect on values, the unfairness of permitting the condemnor to indirectly profit by its own act of condemnation has been recognized. Conversely, fairness also requires that the condemnor not be required to pay an inflated price created by its own initiative. Hence the general rule forbidding consideration of the effect of the proposed project upon the value of the land taken. Shoemaker v. United States, 147 U.S. 282, 304–305, 13 S.Ct. 361, 37 L.Ed. 170 (1893); United States v. Miller, 317 U.S. 369, 63 S.Ct. 276, 87 L.Ed. 336 (1943); United States v. Reynolds, 397 U.S. 14, 16, 90 S.Ct. 803, 25 L.Ed.2d 12 (1970); see 3 Nichols on Eminent Domain § 8.61, at 53 (1965).

In applying this rule to the question at bar, the controlling decision is United States v. Virginia Electric & Power Company, 365 U.S. 624, 81 S.Ct. 784, 5 L.Ed.2d 838 (1963). In that case, the Government condemned a flowage easement over a large tract of land adjacent to the Roanoke River. The respondent company had for some years owned a perpetual and exclusive flowage easement within the easement taken by the Government, and claimed compensation for the destruction of its interest. After the Court concluded that the company's easement had compensable value to the extent that it represented the power to impair nonriparian uses of the servient fee, there arose the problem of appraising the value of such an estate. Drawing upon the Fifth Circuit case of Augusta Power Company v. United States, 278 F.2d 1 (5th Cir. 1960), the Court held that the value of the unencumbered fee should be apportioned between the fee owner and the easement holder according to the probability of the easement's exercise. The value of the easement would increase with the probability of its exercise, and diminish as this eventuality became less likely. In assessing this probability, the Court emphasized that the imminence of the Government's taking, which would clearly render impossible the easement's exercise, must be totally disregarded:

In a word, the value of the easement is the nonriparian value of the servient land discounted by the improbability of the easement's exercise. It is to be emphasized that in assessing this improbability, no weight should be given to the prospect of governmental appropriation. The value of the easement must be neither enhanced nor diminished by the special need which the Government had for it. * * * The Court must exclude any depreciation in value caused by the prospective taking once the Government 'was committed' to the project. * * * Accordingly, the impact of that event upon the likelihood of actual exercise of the easement cannot be considered. As one writer has pointed out, '[i]t would be manifestly unjust to permit a public authority to depreciate property values by a threat * * * (of the construction of a

---

the taking. Whatever comfort plaintiff may derive from *Cox* has been eliminated by Congress, which specifically provided in Section 111 for a showing of uses which "may be dependent upon access to or utilization of such nav-

igable waters." For the same reason, plaintiff's reliance on United States v. 85,237 Acres, 157 F.Supp. 150 (S.D.Tex. 1958), aff'd Guerrero-Zopata Bridge Co. v. United States, 252 F.2d 116, 117 (5th Cir. 1958), is misplaced.

government project) and then to take advantage of this depression in the price which it must pay for the property' when eventually condemned. I Orgel, Valuation Under Eminent Domain, § 105, at 447 (2d ed.)

365 U.S. at 635–636, 81 S.Ct. at 792, 5 L.Ed.2d 838.

■ The applicability of this principle to the instant case is apparent. In assessing the probability that permits would have issued for channel-cut development of defendants' land—or, more precisely, in projecting a willing buyer's and seller's assessment of that probability—no weight may be given to the impact of the prospective taking for the Wallisville Reservoir Project.

Accordingly, defendants' motion in limine shall be granted. Movants shall submit a proposed order consistent herewith, after approval as to form by opposing counsel.