**1827 M STREET, INC., Appellant,**

v.

**DISTRICT OF COLUMBIA, Appellee.**

No. 85–688.

District of Columbia Court of Appeals.

Argued Feb. 4, 1986.
Decided Jan. 29, 1988.

Edgar B. May, Washington, D.C., for appellant.

Lutz Alexander Prager, Asst. Deputy Corp. Counsel, Washington, D.C., for appellee. John H. Suda, Acting Corp. Counsel at the time the brief was filed, Charles L. Reischel, Deputy Corp. Counsel, and Richard B. Nettler, Asst. Corp. Counsel, Washington, D.C., at the time the brief was filed, were on the brief, for appellee.

Before MACK, TERRY, and STEADMAN, Associate Judges.

TERRY, Associate Judge:

Appellant 1827 M Street, Inc., the owner of an improved parcel of land at 1827 M Street, N.W. (Lot 815, Square 139), in downtown Washington, appeals from a judgment of the Superior Court upholding the District of Columbia's assessment of its property for tax years 1983 and 1984. Appellant contends that the court erred in refusing to require the tax assessor to take into account for valuation purposes, (1) for tax year 1983, that historic preservation groups were preparing an application to extend the boundaries of the Dupont Circle Historic District to include the property at issue, and (2) for tax year 1984, that an application to extend the boundaries of the Dupont Circle Historic District to include the property was pending before the Joint Committee on Landmarks. We hold that the pendency of the application must be taken into account by the assessor because it is a "factor which might have a bearing on the market value of the real property," D.C. Code § 47–820(a) (1987), but that the prospective filing of the application need not be taken into account. We therefore affirm the trial court's judgment sustaining the 1983 assessment but reverse it as to the 1984 assessment.

I

In the District of Columbia, the designation of an area as a historic district is governed by the Historic Landmark and Historic District Protection Act of 1978 ("the 1978 Act")[1] and its implementing regulations.[2] After a study of the architectural, cultural, and historic merits of the properties or buildings in a particular area,[3] an application to designate that area as a historic district is filed with the Historic Preservation Review Board (or in this case with its predecessor, the Joint Committee on Landmarks).[4] The Board then

---

1. D.C.Law No. 2–144, 25 D.C.Reg. 6939 (1979), codified at D.C.Code §§ 5–1001 through 5–1015 (1981 & 1987 Supp.).

2. Historic Preservation Review Board Rules (hereafter "HPRB Rules"), 32 D.C.Reg. 1979 (1985).

3. See HPRB Rules §§ 115.4, 124.1, 32 D.C.Reg. 1985, 1989 (1985).

4. The Joint Committee on Landmarks of the National Capital was an inter-governmental agency jointly sponsored by the United States and District of Columbia governments. It was designated in 1968 as the District's professional review committee so that the District might qualify for participation in the federal historic preservation program established in 1966. See *A & G Limited Partnership v. Joint Committee on Landmarks,* 449 A.2d 291 (D.C.1982); *Latimer v. Joint Committee on Landmarks,* 345 A.2d 484 (D.C.1975).

In recent years the functions of the Joint Committee have been taken over by the Historic Preservation Review Board, established pursuant to D.C.Code § 5–1003 (1981). See Mayor's Order No. 83–119, 30 D.C.Reg. 3031 (1983). At

holds a public hearing,[5] after which it decides whether to recommend to the State Historic Preservation Officer (SHPO) for the District of Columbia that the historic district be nominated to the National Register of Historic Places. If the Board makes such a recommendation and the SHPO nominates the proposed historic district or issues a written determination to do so, see D.C.Code § 5–1002(5)(B), (C) (1981), the area officially becomes a historic district, entitled under the 1978 Act to certain protections from demolition or alteration. See D.C.Code §§ 5–1004 through 5–1007 (1981). This entire process usually takes several years.

In the latter part of 1981, four historic preservation groups were preparing an application to extend the boundaries of the Dupont Circle Historic District. Appellant's property[6] was not then within the existing historic district, but it was within the proposed area of expansion. Sometime in February 1982 (the exact date is not clear from the record) the application was filed with the Joint Committee on Landmarks. On June 29, 1983, the Joint Committee recommended to the SHPO that the boundaries of the historic district be expanded. 30 D.C.Reg. 3742 (1983). Acting on the recommendation, the SHPO on January 4, 1985, issued a written determination to nominate the designated expansion areas for inclusion in the Dupont Circle Historic District, thereby subjecting those areas to all the provisions of the 1978 Act. Appellant's property was specifically listed in that notice by lot and square number, along with dozens of others. 32 D.C.Reg. 119 (1985).

On February 22, 1982, the Department of Finance and Revenue notified appellant that the assessed value of its property for tax year 1983 was $1,170,100.[7] On appeal to the Board of Equalization and Review, the assessment was sustained. Appellant then filed a petition in the Superior Court for review of the assessment under D.C. Code § 47–3305 (1987). While that case was pending in court, appellant received notice that the assessed value of the property for tax year 1984 would remain at $1,170,100.[8] The Board of Equalization and Review reduced the 1984 assessment by $100,000, to $1,070,100. Appellant then filed another petition in the Superior Court for review of the 1984 assessment, and the two cases were consolidated.

The District of Columbia moved for partial summary judgment on the issue of "whether, as a matter of law, the recommendation by the Joint Committee on Landmarks that the area containing the petitioner's property be nominated by the State Historic Preservation Officer ... as [a] Historic District imposes restrictions on the development of that property." The District argued that, since appellant's property was not located in a historic district when assessed, and since neither the filing of the application nor the mere recommendation that an area including appellant's property be placed in a historic district subjected it to the restrictions of the 1978 Act, the assessor had no obligation to consider the possibility that the property might someday be included in a historic district when determining its market value. Appellant responded that "certain immediate practical, legal consequences do occur as a result of the mere filing of an application to

all times pertinent to this case, however, the Joint Committee was still exercising those functions.

5. See HPRB Rules §§ 120–123, 32 D.C.Reg. 1987–1989 (1985).

6. The property at issue in this case is a four-story town house leased to a single tenant. The tenant operates a Mexican restaurant, El Palacio, on the ground floor. The second floor contains the kitchen, storage space, and other support facilities for the restaurant. The third and fourth floors are not used.

7. The tax year begins on July 1 and ends on June 30. D.C.Code § 47–802(7) (1987). The assessed value of all real property is determined as of January 1 of the year preceding the tax year. D.C.Code § 47–820(a) (1987). Thus tax year 1983 ran from July 1, 1982, through June 30, 1983, and the valuation date for tax year 1983 was January 1, 1982—a little more than one month before the application was filed to expand the Dupont Circle Historic District.

8. The valuation date for tax year 1984 was January 1, 1983. D.C.Code § 47–820(a) (1987).

create an official historic district," and that these consequences affected its ability to develop the property if it should choose to do so. Accordingly, appellant argued that it should be allowed to present evidence at trial to show the impact of historic preservation laws "on the valuation of ... an architecturally meritorious Victorian town house."

The court granted the District's motion for partial summary judgment. It concluded that since the valuation date for tax year 1984 was January 1, 1983, and the Joint Committee's recommendation to expand the historic district was made on June 29, almost six months later, the recommendation could have no effect on the 1984 assessment. The court noted, in any event, that the mere recommendation that an area be designated for inclusion in a historic district "does not create an official historic district within the meaning of [the 1978 Act]"; such a recommendation was only "an unofficial preliminary step...." The court specifically rejected appellant's contention "that the significant development relevant to the value of its property" was the February 1982 filing of the application to include the property in the Dupont Circle Historic District, on the ground that "there was too much room for speculation and conjecture in that initial phase of the decision-making process about future decisions and consequences" to warrant a reduction in the 1984 assessment. It also rejected appellant's argument that certain practical consequences of the pending recommendation "serve[d] as a legal impediment to the development of the property," holding that appellant had not made a sufficient factual showing to support this assertion.

After the court denied appellant's motion for reconsideration or in the alternative for certification of an interlocutory appeal,[9] the parties filed a joint proffer of evidence in lieu of a trial on the market value of the property. In the joint proffer the parties agreed that, apart from historic preserva-

tion considerations, the tax assessor's estimate of the market value of the property was correct.[10] Appellant proffered, in addition, evidence tending to show the effect that the pending application would have on the market value of the property. Finally, appellant proffered that some of the nearby properties which the assessor had cited as comparable in determining the value of appellant's property [11] were not truly comparable, in part because they were outside the designated historic district. The court then entered judgment in favor of the District of Columbia with respect to both the 1983 and 1984 tax years.

## II

█ "In reviewing on appeal the propriety of a summary judgment, this court must determine whether there is any unresolved issue of fact relevant to the ruling and also whether the trial court correctly applied the substantive law.... In carrying out that task, we must view the record in the light most favorable to the party who opposes summary judgment...." *Davis v. Gulf Oil Corp.*, 485 A.2d 160, 164 (D.C. 1984) (citations omitted). Furthermore, "the moving party has the burden to demonstrate the absence of any material factual issue. Any doubt as to whether or not an issue of fact has been raised is sufficient to preclude a grant of summary judgment." *McCoy v. Quadrangle Development Corp.*, 470 A.2d 1256, 1259 (D.C.1983) (citation omitted). We hold that in this case the effect of the pending application for expansion of the historic district on the value of appellant's property was a material issue of fact, and that the trial court therefore erred in granting partial summary judgment to the District of Columbia.

The District of Columbia is required to assess the market value of real property at least once every two years, "and as soon as practicable such assessment shall be made annually." D.C.Code § 47–820(b) (1987). "The assessed value for all real property

---

9. *See* D.C.Code § 11–721(d) (1981).

10. In a trial appellant would bear the burden of proving that the assessment was incorrect.

*Brisker v. District of Columbia,* 510 A.2d 1037, 1039 (D.C.1986) (citing cases).

11. *See* 9 DCMR § 307.3 (1986).

shall be the estimated market value of such property as of January 1st of the year preceding the tax year, as determined by the Mayor." [12]    D.C.Code § 47–820(a) (1987). The Code defines "estimated market value" as:

> 100 per centum of the most probable price at which a particular piece of real property, if exposed for sale in the open market with a reasonable time for the seller to find a purchaser, would be expected to transfer *under prevailing market conditions* between parties who have knowledge of the uses to which the property may be put, both seeking to maximize their gains and neither being in a position to take advantage of the exigencies of the other.

D.C.Code § 47–802(4) (1987) (emphasis added). Furthermore, in determining the estimated market value of real property, the assessor must "take into account *any factor* which might have a bearing on the market value of the real property...." D.C.Code § 47–820(a) (1987) (emphasis added). The regulations likewise require the assessor to "take into account *all available information* which may have a bearing on the market value of the real property" in determining its assessed value. 9 DCMR § 307.1 (1986) (emphasis added); *see District of Columbia v. Washington Sheraton Corp.*, 499 A.2d 109, 112–113 (D.C. 1985).

■ Given this language in the tax code and the regulations, we hold that the effect of the pending application to expand the Dupont Circle Historic District should have been taken into account by the tax assessor in determining the estimated market value of appellant's property. In the joint proffer of evidence, appellant proffered testimony that the inclusion of its property in the proposed area of expansion would reduce its market value.[13] Such evidence was clearly a "factor which might have a

bearing on the estimated market value of the real property," which section 47–820(a) of the Code requires the assessor to take into account. It was also relevant to any determination of "prevailing market conditions" and of "the uses to which the property may be put." D.C.Code § 47–802(4) (1987). *See also* 9 DCMR § 307.1 (1986) (assessor must "take into account all available information which may have a bearing on the market value of the real property, including, but not limited to ... [g]overnment imposed restrictions ... [i]ncome earning potential (if any) ... [and the] highest and best use to which the property can be put"). The effect of the Superior Court's grant of summary judgment to the District of Columbia was to exclude this evidence from consideration. This was error.

Although there appear to be no reported cases dealing with the precise question presented here, we find support for our holding in cases involving imminent changes in zoning classifications. Many courts have held, usually in eminent domain cases, that in determining the fair market value of a piece of property, evidence of a reasonable probability of a change in zoning within a reasonable time may be admitted, and its effect on market value may be taken into account. *E.g., Department of Public Works & Buildings v. Rogers*, 39 Ill.2d 109, 113–14, 233 N.E.2d 409, 412 (1968); *State Roads Commission v. Orleans*, 239 Md. 368, 379, 211 A.2d 715, 722–723 (1965); *State Roads Commission v. Warriner*, 211 Md. 480, 484, 128 A.2d 248, 250 (1957); *State ex rel. State Highway Commissioner v. Speare*, 86 N.J.Super. 565, 579–81, 207 A.2d 552, 560, *cert. denied*, 45 N.J. 589, 214 A.2d 28 (1965); *Bembinster v. State Department of Transportation*, 57 Wis.2d 277, 282, 203 N.W.2d 897, 900 (1973); *see also* 29A C.J.S. *Eminent Domain* § 273()2) & nn. 19.42–19.44 (1955 & 1987 Supp.) (citing cases);

---

12. The Mayor's authority to determine the assessed value of real property has been delegated to the Director of the Department of Finance and Revenue.

13. Appellant proffered, *inter alia,* the testimony of an expert that any willing buyer having

knowledge of the pending application to expand the historic district 'would not have valued the property as if the highest and best use was assemblage and demolition, but rather from the viewpoint of income potential assuming the property was required to be preserved."

Annotation, *Zoning As a Factor in Determination of Damages in Eminent Domain*, § 6(a), 9 A.L.R.3d 291, 309–311 (1966). The inclusion of a building in a historic district limits the use to which that building may be put in the same way that a restrictive zoning classification limits its use, and thus the reasonable probability of its inclusion in a historic district may affect its market value just as a reasonable probability of a change in zoning may affect its market value. We find the zoning analogy persuasive and adopt the rationale of those cases as applicable to this historic preservation case.[14]

The District invites our attention to D.C. Code § 47–842 (1987), suggesting that it affords appellant the only relief it is entitled to receive. Section 47–842 provides that "certain officially designated historic buildings" must be assessed not only at their fair market value, but also on the basis of their current use and structure. Tax liability to the District is then based on the smaller of these two assessments.[15] Appellant's property, however, is not an "officially designated historic building," and thus the assessor is not required to base his or her assessment on its current use and structure. Moreover, section 47–842 must be read in a manner consistent with the rest of the Code, particularly sections 47–802(4) and 47–820. The fact that a piece of property may not be entitled to historic property tax relief under section 47–842[16] does not mean that the pendency of a historic district application before the Historic Preservation Review Board (or the Joint Committee on Landmarks), a factor "which might have a bearing on the market value of the real property," D.C.Code § 47–820(a) (1987), should not be taken into account in determining the value of that property. The two valuations are separate and distinct, and one does not exclude the other.

▮ A further question remains: at what point should the tax assessor be required to consider the likelihood that a particular piece of property may be included in a historic district? For the answer we look once again to the Code and the regulations. Section 47–820(a) states that assessments "shall be based upon the sources of information available to the Mayor...." The applicable regulation likewise requires the Director of Finance and Revenue to "take into account all available information which may have a bearing" on the value of the property. 9 DCMR § 307.1 (1986). The key word here is "available." Given this language, we hold that the filing of an application with the Historic Preservation Review Board, an executive branch agency, makes any information in that application "available" for tax assessment purposes. The filing of the application puts the Mayor and all his subordinates, including the tax assessor, on notice of its contents. Consequently, the assessor must take into account the effect that such an application, if granted, may have on the estimated market value of the property. On the other hand, we see no reason to require the assessor to consider the possibility that someone, someday, may file such an application. Even if the assessor knows that an application is being prepared, there is always a chance that it will never be filed or that, when filed, it will not include the particular property at issue. Until the application is filed, the likelihood that the property will be part of a historic district cannot, in our

---

14. We emphasize, however, that the value of the property can be affected only by a reasonable probability, not a "mere possibility," that it may be included in a historic district. *See* 27 Am. Jur.2d *Eminent Domain* § 277 (1966).

15. D.C.Code § 47–842 provides:

   For certain officially designated historic buildings in the District, the Mayor shall, in addition to assessing at full market value, assess land and improvements on the basis of current use and structures of the buildings,

which latter assessment, if it is less than full market value, shall be the basis of tax liability to the District.

16. To be eligible for "historic property tax relief" under section 47–842, "real property must be a historic building designated by the Joint Committee on Landmarks of the National Capital and, in addition, must be approved by the Mayor under § 47–844." D.C.Code § 47–843 (1987).

view, be deemed a reasonable probability.[17] Thus we conclude that the anticipated filing of an application can have no legally cognizable effect on the estimated market value of the property.

The District argues that any effect the historic district application might have had on the market value of appellant's property was already factored into the assessor's calculations because the other properties which the assessor used for comparison (known in the trade as "comparables")[18] were also subject to inclusion in the historic district. But that is not what really happened. In addition to using as comparables properties located in both the existing historic district and the proposed area of expansion, the assessor also used properties located outside both areas, which were not truly comparable. The mere fact that such properties, given their age and architecture, might have been the subject of applications for historic district designation did not make them comparable properties, because in fact they were not located in an area which was the subject of an actual application to create or expand a historic district. To treat them as true comparables, the assessor should have made adjustments in their selling prices to reflect the dissimilarities with appellant's property. *District of Columbia v. Washington Sheraton Corp., supra,* 499 A.2d at 113. This was not done.

The fact that the Director of Finance and Revenue may use any of the three recognized methods of valuation, see note 18, *supra,* does not mean that he may refuse to consider a factor which might have a bearing on the market value of the property. Whatever method he uses, he must always take such factors into account in his calculations. D.C.Code § 47–820(a) (1987). If he elects to use the comparable sales method, he must restrict his choice of comparables to other properties in the area subject to the same (or a similar) pending historic district application. If that is not possible, he must adjust the prices of the comparables he chooses so as to reflect the fact that they are outside the designated area (and thus not likely to be subject to the restrictions of the historic preservation statute), thereby making them truly comparable. *District of Columbia v. Washington Sheraton Corp., supra,* 499 A.2d at 113.

### III

From what we have said, it follows that we must sustain the 1983 assessment but overturn the 1984 assessment. The application to expand the Dupont Circle Historic District was filed in February 1982, so that it could have had no legal effect on the January 1982 valuation of the property for tax year 1983. Its pendency on January 1, 1983, however, should have been taken into account by the assessor—and therefore by the trial court—in determining the value of the property for tax year 1984. We therefore affirm the judgment of the Superior Court insofar as it upheld the assessment for tax year 1983, but we reverse it as to the assessment for tax year 1984 and remand the case for further proceedings consistent with this opinion.

*Affirmed in part, reversed in part, and remanded.*

STEADMAN, Associate Judge, concurring in part and dissenting in part:

I am impelled to differ with the majority's treatment of the 1983 assessment.

We deal here with a statutory command that property be assessed at market value and that, in determining such value, the decision-maker "shall take into account *any factor* which *might* have a bearing on the market value of the real property." D.C.Code § 47–820(a) (1987 repl.) (emphasis added). What particular factors may af-

---

17. See note 14, *supra.*

18. In determining the market value of a piece of property, the assessor may use one or more of the three generally recognized methods of valuation: the comparable sales method, the re-placement cost method, or the income method. 9 DCMR §§ 307.2–307.5 (1986); *see District of Columbia v. Washington Sheraton Corp., supra,* 499 A.2d at 113–114. In this case the assessor utilized the comparable sales method.

fect the market value of a particular piece of property and when they begin to exert that effect to an appreciable extent are basically questions of fact, determined with the input of those skilled in the field.

We are reviewing a grant of summary judgment. Although the record is not entirely clear, I read appellant as asserting that on the critical date in question, January 1, 1982, the prospects of inclusion in an historic district were appreciably affecting the market value of its property. Although no application was formally filed until a month later, considerable activity toward historic district status was taking place. Satisfying though it is to draw bright lines in the law, I am unable to say that there could be no legitimate factual dispute about the effect of such activity on market value.

The majority quite rightly looks to zoning changes in eminent domain litigation for a close analogy. The leading authority on the subject summarizes the law as follows:

> The potential exercise of the police power in such manner as to affect deleteriously the value of property cannot be presumed. However, where the likelihood of the future exercise of such power is so great as to have *an observable effect upon present market value*, it may be considered in determining the compensation to be paid for such property when it is taken by eminent domain.

4 *Nichols on Eminent Domain* § 12.322, at 12–627 (rev. 3d ed. 1985) (emphasis added). *See also id.* § 12.322[1], at 12–637. Likewise, in jurisprudence applicable to our decision-making, it has been held that

"[o]nly if the trial judge is satisfied that a jury could not reasonably conclude that the possibility of a zoning change would affect the fair market value should he instruct the jury to disregard that element of value." *H & R Corp. v. District of Columbia,* 122 U.S.App.D.C. 43, 45, 351 F.2d 740, 742 (1965); *see also Reservation Eleven Assocs. v. District of Columbia,* 136 U.S.App. D.C. 311, 313, 420 F.2d 153, 155 (1969).

In my view, the oft-mentioned requirement of "reasonable probability" or the like[1] is a short-hand encapsulation of the concept that the prospect of change must be such as to exert an effect on market value.[2] In any event, I certainly cannot say on the record before us that the filing of a historic district application is, as a matter of law, the critical event that turns the prospect of change into such a probability, even in the general run of cases. Furthermore, I do not read the statutory language that assessments shall be based upon the sources of information available to the Mayor as precluding the use of information about prospective historic district status that would be known generally to informed buyers. Assessors are not limited to information contained in formal records. D.C.Code § 47–820(a).

Accordingly, I would reverse in its entirety the order granting the summary judgment and remand for further proceedings.[3]

---

1. As pointed out in *H & R Corp. v. District of Columbia, supra,* strictly speaking, the issue is not whether there is in fact a reasonable probability (the opinion indeed uses the phrase "reasonable possibility") but rather whether knowledgeable buyers would think there was a reasonable probability. 122 U.S.App.D.C. at 44 n. 1, 351 F.2d at 741 n. 1.

2. The relationship between expressions of the immediacy of prospective change and actual effect on market value is insightfully discussed in *Ada County Highway District v. Magwire,* 104 Idaho 656, 662 P.2d 237 (1983), citing cases. *See* 4 *Nichols on Eminent Domain, supra,*

§ 12.322(1), at 12–651, –653 ("even where the likelihood of the change is remote, if the likelihood is sufficient to have an appreciably enhancing effect upon present market value, it may be considered").

3. I might add that the District's assertion that true comparables (perhaps brought about by adjustment) would reflect the market's assessment of the likelihood of historic district status seems quite compelling. Whether those offered by the District are in reality such is another factual question I understand to be in dispute, and not one I would resolve on this appeal.